IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BLACK & DECKER (US), INC.,

    Plaintiff,

v.                                                          No. 08-1015

ALI INDUSTRIES, INC.,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION
_____

On January 21, 2008, the Plaintiff, Black & Decker, Inc. ("B&D"), filed the instant declaratory judgment action against the Defendant, Ali Industries, Inc. ("Ali"), pursuant to 28 U.S.C. § 2201, seeking a determination of the parties' rights and liabilities with respect to a commercial contract. Before the Court is the Defendant's motion to compel arbitration and stay proceedings. (Docket Entry ("D.E.") No. 22.) The Plaintiff has responded and this motion is now ripe for disposition.

## BACKGROUND

The Plaintiff is a Maryland corporation engaged in the business of manufacturing and selling power tools. (D.E. No. 1, Compl. ¶ 8.) In October 2004, B&D acquired Porter Cable Corporation ("Porter Cable") from Pentair Inc. ("Pentair"), Porter Cable's parent company. (Id.) Ali and Pentair had entered into a contract on April 23, 2002, that required Ali to supply Pentair with all of its forecasted requirements of sandpaper and other abrasive products ("the Supply Agreement") for its Porter Cable tools. (Id. ¶¶ 14-15.) When Porter Cable was merged into B&D on May 2, 2005, as

part of an internal reorganization, the Supply Agreement was transferred by operation of law to the Plaintiff. (Id. ¶ 8.)

The Supply Agreement, which went into effect on June 6, 2002, was to expire by its own terms on December 31, 2007. (D.E. No. 1, Ex. 1 to Compl., Supply Agreement ¶ 1.) During the five-and-a-half year period of the contract, Ali agreed to "supply a maximum of 150% and a minimum of 100% of Pentair's forecasted demand for sandpaper." (Id. ¶ 5.A.) Pentair, in turn, promised to provide an annual forecast of its needs, which it would update on a monthly basis. (Id.) Ali was to commit "to maintain inventory levels to meet the projected approximate 3 weeks requirements as reflected" in the forecast. (Id. ¶ 12.B.)

The Supply Agreement included a paragraph that governed dispute resolution. First, sub-paragraph 2.A stated that Ali agreed to follow Pentair's dispute resolution process, under which "the respective people involved [in a dispute would] attempt to resolve the dispute within ten working days." (Id. ¶ 2.A.) If the dispute was not resolved within 30 working days, "the execution team [would] conduct a meeting to resolve the issue." (Id.) If the dispute was still not resolved after 60 working days, "either party [could] submit the issue to arbitration during the next fifteen days as provided in [sub-paragraph 2.B.]." (Id.) Next, sub-paragraph 2.B stated that "Ali and Pentair agree[d] to a 3rd party arbitration should either party believe agreement termination was unjustified. Requests for 3rd party arbitration must be made in writing within 5 working days of receipt or written agreement termination from the other party." (Id. ¶ 2.B.) Under sub-paragraph 2.C, Ali agreed "to provide uninterrupted service as detailed in this [contract] in the event of a dispute." (Id. ¶ 2.C.) Furthermore, Pentair would to continue to pay invoices on time in the event of a dispute pursuant to sub-paragraph 2.D. (Id. ¶ 2.D.)

In early September 2007, the Plaintiff gave Ali a forecast projecting its needs through December 31, 2007, the termination date of the contract. (D.E. No. 1, Compl. ¶ 26.) When Ali requested a more long-term forecast, B&D informed the Defendant that it intended to find another supplier of sandpaper and abrasive products as of January 1, 2008, the day after the Supply Agreement expired. (D.E. No. 1, Ex. 3 to Compl., Email from James Wamsley, B&D's Sourcing Manager.) The Defendant subsequently sent B&D an invoice for close to $700,000 for the inventory Ali had manufactured by September in anticipation of the Plaintiff's 2008 needs. (D.E. No. 1, Ex. 4 to Compl., Letter from Terry Ali, President of Ali.) The Defendant asserted that because "there was no advance notice given for termination of our contract we feel we have no other option than to invoice [B&D] for the . . . inventory." (Id.) In addition, the company invoked sub-paragraph 1.C of the Supply Agreement, which states that if either party decides to secede from the contract, Porter Cable will be responsible "for all inventories on certain products and one year on selective sku's that will be determined at a later date and reviewed from time to time." (Id.; D.E. No. 1, Ex. 1 to Compl., Supply Agreement ¶ 1.C.)

B&D responded with a letter asserting that it was under no obligation to give the Defendant notice of the expiration of the Supply Agreement and that it was not required to purchase any excess inventories that were prepared based on Ali's own estimation of the Plaintiff's needs, rather than forecasts provided by B&D. (D.E. No. 1, Ex. 5 to Compl., Letter from James Wamsley, B&D's Sourcing Manager.) Ten days after the Supply Agreement expired, Ali's attorney sent a letter to the Plaintiff's lawyer, invoking the arbitration provision of the Supply Agreement on the basis that a dispute had arisen between the parties "concerning [B&D]'s continuing obligations to Ali under the

3

Agreement." (D.E. No. 1, Ex. 6 to Compl., Letter from Richard Talda, Ali's Attorney.) Shortly thereafter, the Plaintiff filed the instant declaratory judgment action.

ANALYSIS

The Federal Arbitration Act (the "FAA") requires district courts to stay proceedings upon their determination that the issue involved in the suit is subject to arbitration under an arbitration agreement. 9 U.S.C. § 3; Maples v. Sterling, Inc., No. 01-1359, 2002 WL 1291239, at *1 (W.D. Tenn. Apr. 22, 2002) (Todd, J.). In addition, § 4 of the statute provides for orders compelling arbitration where one party has failed, neglected or refused to arbitrate under an arbitration agreement. 9 U.S.C. § 4. When determining whether to grant a motion to compel arbitration, courts must consider whether the arbitration agreement is valid and enforceable. Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 665-66 (6th Cir. 2003). In this case, the Plaintiff does not dispute that the Supply Agreement contains a valid agreement to arbitrate under the FAA. (D.E. No. 26, Resp. in Opp., at 9-10.)

If the arbitration provision is valid, courts must decide whether it covers the dispute at hand. Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 160 (6th Cir. 1983). "Where a commercial contract contains a broad arbitration provision covering all controversies arising under the agreement, arbitration is ordered unless the person seeking to avoid it can show that the particular dispute is expressly excluded." Id. Where an arbitration clause covers only a specific type of dispute, however, courts cannot require arbitration on claims that are not included. Simon v. Pfizer Inc., 398 F.3d 765, 775 (6th Cir. 2005) (citation omitted).

B&D argues that the dispute between the parties falls outside of the scope of the arbitration provision because the Supply Agreement only compels arbitration when there is an allegation that

4

the contract was unjustly terminated. By contrast, the Defendant contends that the provision applies broadly to all disputes that arise from the Supply Agreement. (D.E. No. 22, Mem. in Supp., at 11.) According the Defendant, "there is no reason to believe that [its] claim for reimbursement of its inventory costs is excluded," because that sub-paragraph 2.A "contains no restrictive language stating that certain claims may or may not be determined through arbitration." (Id. at 12.)

The Court agrees with the Plaintiff that the arbitration provision does not cover all controversies arising under the Supply Agreement. First, the portion of the provision that Ali relies upon, which uses the phrase "[i]f a dispute arises," merely describes the *process* the parties agreed to in the event there was an arbitrable controversy between the two. (See D.E. No. 1, Ex. 1 to Compl., Supply Agreement ¶ 2.A ("Ali agrees to the Pentair dispute resolution process as detailed below").) The next sub-paragraph states which disputes are subject to arbitration: "Ali and Pentair agree to a 3rd party arbitration should either party believe agreement termination was unjustified." (Id. ¶ 2.B.) In this case, there is no allegation that the Supply Agreement was *wrongly* terminated; instead, it merely expired. The Defendant's claim is based on its contention that B&D was obligated to give it notice that it did not intend to renew the contract.[1] Thus, it does not fall within the scope of the arbitration provision and the Plaintiff cannot be compelled to arbitrate this dispute. See Simon, 398 F.3d at 775 ("A longstanding principle of this Circuit is that no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.") (internal quotation marks and citation omitted).

---

[1] The Court notes that there is no provision in the Supply Agreement regarding renewal of the contract and no requirement that either party give notice if they do not intend to continue the business arrangement.

5

Even if the arbitration provision covers all disputes arising from the Supply Agreement, the Court nonetheless concludes that Ali's motion should be denied. As noted above, the dispute between the parties stems from a disagreement over what B&D owed the Defendant upon expiration of the agreement, when Ali accumulated inventory in anticipation of the Plaintiff's post-contract needs. (See D.E. No. 1, Ex. 2 to Compl., Email from Craig Murakami, Director of Manufacturing at Ali (noting that B&D had not yet provided forecasts for 2008 yet)); see also Ex. 5 to Compl., Letter from James Wamsley, B&D's Sourcing Manager (affirming that the Plaintiff intended to purchase the inventory for which it had provided forecasts, namely through December 31, 2007); Ex. 6 to Compl., Letter from Richard Talda, Ali's Attorney (asserting ten days after the expiration of the Supply Agreement that "a dispute has arisen concerning [B&D's] continuing obligations to Ali . . . .").) The Sixth Circuit has held that there is a presumption in favor of arbitration when a dispute brought *after* the expiration of a contract, which includes an arbitration provision, arises *under* that agreement. Zucker v. After Six, Inc., 174 F. App'x 944, 947 (6th Cir. 2006) (citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204 (1991)). A claim arises under the contract when

> it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

Litton, 501 U.S. at 205-06.

None of these situations applies in this case. First, the dispute does not involve facts or occurrences that arose before the Supply Agreement's expiration, because, while the Defendant demanded payment from B&D *before* the termination of the contract, it was in anticipation of the Plaintiff's refusal to buy any more of its products *after* December 31, 2007. Second, Ali's claim

6

does not infringe a right accrued or vested in the contract, because the agreement does not govern the parties' obligations to each other after its expiration; it only states what should happen when a party secedes from it or terminates it prematurely. (See e.g., D.E. No. 1 Ex. 1 to Compl., Supply Agreement ¶ 1.C (stating that Porter Cable will be responsible for inventories on certain products in the event that either party secedes from the contract); ¶ 2.B (stating that parties must arbitrate if contract termination is unjustified).) Furthermore, there are no provisions for automatic renewal or extension of the contract. Thus, there is no indication in the Supply Agreement that the parties' rights and obligations would survive its expiration. Because Ali's claim does not arise from the terms of the contract, therefore, the Court cannot conclude that it is subject to its arbitration provision.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the Defendant's motion to compel arbitration and stay proceedings.

IT IS SO ORDERED this 24th day of July, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE